IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | **CRIMINAL ACTION** |
| v. | ) ) | No. 07-10221-08-MLB |
| GREGORY REYNOLDS, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress evidence seized pursuant to a search warrant. (Doc. 130). The motion has been fully briefed and is ripe for decision. (Docs. 131, 151). Defendant's motion is denied for reasons herein.

**I. Facts**

In addition to facts concerning defendant's activities, the affidavit attached to the application for the search warrant also contains the activities of Tyrone Andrews, a co-defendant. Wichita police were conducting surveillance on Andrews' activities and they also had received authorization for a wiretap. Facts surrounding the investigation of Andrews and other co-defendants can be found in this court's prior orders. (Docs. 117 and 122).

The following are relevant excerpts, specific to defendant, from the affidavit pertaining to the search in question:

> On September 18, 2007, investigators intercepted a phone call from TARGET TELEPHONE 2 to 316-312-9186. ANDREWS called an unknown male and asked him what he was trying to do. The unknown male responded that he'd have to give the guy a call and see. Detective Lance Oldridge learned that the subscriber for 316-312-9186 is Gregory Reynolds, 942 N. Oliver, Wichita, KS. At 1852 hours the

> unknown male called ANDREWS back and told him he needs two and that ANDREWS could meet him in around thirty minutes at the house. Affiant checked the records of the Wichita Police Department and learned that Gregory Reynolds is a black male, date of birth 8/11/73, and has used 942 N. Oliver on several occasions as his address. Reynolds has also used the address of 2611 E. Shadybrook as his home address. Affiant learned that Reynolds frequently stays at his girlfriend's address which is 2611 E. Shadybrook.
>
> On September 18, 2007, at 1930 hours investigators intercepted a phone call from TARGET TELEPHONE 2 to Gregory Reynolds and ANDREWS indicated he was at the house. Investigators on surveillance observed ANDREWS in his vehicle arrive at 2611 E. Shadybrook. Reynolds indicated he was about to pull up and at 1935 hours investigators observed a blue van arrive which has been driven by Reynolds in the past. Investigators on surveillance observed ANDREWS and Gregory "Petey" Reynolds go inside 2611 E. Shadybrook. ANDREWS left after a few minutes while Reynolds stayed at the residence.

(Case No. 07-M-6295-01-DWB, Doc. 3 at 12-13.)

The affidavit then extensively describes defendant's significant criminal history. Defendant has been convicted on numerous occasions of possession of narcotics and possession with the intention to distribute. Defendant has also been convicted of carrying a concealed firearm.

On September 19, 2007, Magistrate Judge Donald Bostwick authorized officers to conduct a search at 2611 E. Shadybrook. The search was executed at 6:07 p.m. on that same day. Although not specifically stated in the parties' submissions, the court assumes that defendant has standing to challenge the search.

**II. Analysis**

Defendant argues that probable cause did not exist for the search warrant because there was no evidence to establish that the residence was linked to a drug transaction and that the phone calls did not show

that the individuals were discussing a drug transaction.  Defendant also alleges that the challenged evidence is not admissible under the "good faith" exception to the exclusionary rule.

### 1. Probable Cause

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The validity of a warrant is not determined by "nit-picking" discreet portions of the application.  Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d at 1165 (quoting United States v. Hernandez-Rodriquez, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general

rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." <u>United States v. Rowland</u>, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting <u>United States v. Corral-Corral</u>, 899 F.2d 927, 937 (10th Cir. 1990)).

The Supreme Court has observed that "a magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). In doing so, reviewing courts must apply the totality of the circumstances test:

> The task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for. . . conclud[ing] that probable cause existed.

<u>Gates</u>, 462 U.S. at 238-39 (internal citation omitted).

Defendant argues that probable cause was lacking to support the search warrant because there is no evidence that a drug transaction occurred at the residence and the phone calls do not establish that the individuals were discussing drugs. After reviewing the affidavit, the court is convinced that there was probable cause to believe that Andrews was a drug dealer. Moreover, calls were intercepted between Andrews and other individuals who used numbers to inform Andrews what they "needed." The numbers were later determined, after controlled buys with Andrews, to be represented of amounts of crack cocaine. The affidavit then shows that a male calls using a phone registered to

defendant and asks for "two." Andrews meets defendant at the Shadybrook residence and the two go inside. Andrews leaves shortly after entering the residence, conduct which the officers have identified as suspicious of a drug transaction. Moreover, defendant has a long history of criminal activity involving narcotics.

While criminal history alone cannot support a finding of probable cause, criminal history, together with other information, can support that finding. United States v. Artez, 389 F.3d 1106, 1114-15 (10th Cir. 2004). And even though defendant has not been charged with any crimes since his release from BOP custody in November 2005, his criminal history as an individual who possess and deals in narcotics has essentially been "refreshed" given his activity with a known drug dealer. See United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998). The court finds that there was probable cause to suspect that defendant was again involved in the narcotics industry.

Defendant further asserts that there was no probable cause to believe that the Shadybrook residence would contain the items sought, i.e. cocaine, paraphernalia, and firearms. In order to establish that probable cause existed to search the residence, there must be a "nexus between the contraband to be seized or suspected criminal activity and the place to be searched." United States v. Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005). Contrary to defendant's assertions, the affidavit established that defendant placed a call to Andrews and requested "two," a signal based on intercepted calls and controlled buys to be a quantity of crack cocaine. Within forty-five minutes of placing that call, defendant meets Andrews at the Shadybrook residence and the two go inside. Andrews exists the residence within a few

minutes, activity that is indicative of a drug transaction. Defendant remains in the residence, presumably with the narcotics. A reasonable inference from this transaction is that defendant buys narcotics inside of the Shadybrook residence and that those narcotics are at the residence. United States v. Perez, No. 96-1216, 1998 WL 188320, *3 (10th Cir. Apr. 20, 1998)(finding that it was reasonable to infer that the defendant kept drugs in his residence after defendant left his home and sold drugs to a confidential informant in a parking lot).

The court finds that it was reasonable to believe, based on the information set forth in the affidavit, that the items sought would be found at defendant's residence. Id. Therefore, the affidavit has established a sufficient nexus between the evidence sought, i.e., financial records and documents, and defendant's residence.

**2. Good Faith Exception**

Even if the affidavit were legally insufficient, however, the court would uphold the search because the officers executing the search warrant acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. See United States v. Leon, 468 U.S. 897 (1984).

The Supreme Court recognizes four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. In these situations, the good-faith exception to the exclusionary rule would not apply.

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role."

-6-

> Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000) (citing throughout United States v. Leon, 468 U.S. 897 (1984)).

Defendant argues that reliance on the affidavit by officers in executing the search warrant was unreasonable, in violation of Leon. When reviewing the reasonableness of an officer's reliance upon a search warrant, a court "must examine the underlying documents to determine whether they are 'devoid of factual support.'" United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993)).

The affidavit supporting the search warrant was not so lacking in indicia of probable cause that the executing officer should have known that the search may have been illegal despite the magistrate's authorization. Nor was the warrant so facially deficient that the executing officer could not believe it was valid. The executing officer could reasonably have believed that the evidence of defendant's association with Andrews, the phone conversations prior to the meet with Andrews at the Shadybrook residence, and defendant's criminal history, along with the officer's knowledge concerning the types of evidence generally maintained in the home by drug dealers, sufficiently linked criminal activity with the Shadybrook residence. See United States v. Nolan, 199 F.3d 1180, 1185 (10th Cir. 1999). The affidavit here is not so lacking in indicia of probable cause that the

executing officers should have known the search was illegal despite the issuing judge's authorization.  See Leon, 468 U.S. at 922 n.23.

Because the court finds that evidence need not be suppressed as a result of the officers' reliance on the search warrant, the remainder of the evidence resulting from execution of that warrant is not subject to the exclusionary rule pursuant to Wong Sun v. United States, 371 U.S. 471 (1963).  Defendant's motion to suppress is denied.


IT IS SO ORDERED.

Dated this ___5th___ day of June 2008, at Wichita, Kansas.


                                      s/ Monti Belot
                                      Monti L. Belot
                                      UNITED STATES DISTRICT JUDGE